## MESSINA v. HAGGERTY, Clerk of Court.*

## CANAL BANK & TRUST CO. v. JARVIS et al.

### No. 14821.

Court of Appeal of Louisiana. Orleans.
April 23, 1934.

Cameron C. McCann, of New Orleans, for Mrs. Vanita Messina.

Spearing & McClendon, of New Orleans, for Canal Bank & Trust Co.

JANVIER, Judge.

These consolidated cases present for determination the question of the ownership of $875.00 in United States currency which came into the custody of the clerk of the criminal district court for the parish of Orleans as the result of the arrest of certain bandits. Part of the money was found in the possession of one Thomas Garrity when he was arrested in Arizona, and the larger portion was located in a room in Slidell, La., which, at the time, was being occupied by Donald White, who was killed resisting arrest, and Martin Jarvis and Vanita Messina, both of whom were, at that time, taken into custody by police officers.

Vanita Messina claims that all of the said money belongs to her, and that it is the balance remaining from her earnings as a rooming-house keeper; whereas, the Canal Bank & Trust Company, which is now in liquidation, asserts that the said money is part of the loot which was obtained by the bandits who had held up and robbed two tellers in one of the branch offices of the said bank, and that Martin Jarvis and Thomas Garrity, who were placed under arrest, and the said White, who was killed while resisting arrest, were the bandits who had committed the said crime.

Separate suits were filed by Vanita Messina and by the Canal Bank & Trust Company, each claiming ownership of the said money. The suits were consolidated and tried together in the district court, one judgment being rendered. The claim of the Canal Bank was recognized and the Messina suit was dismissed.

The evidence proves conclusively that when the holdup was committed the three men named were guilty and that there was taken from the bank more than $14,500 in cash. It is not denied that the Messina woman was living with one of the men as his wife, though not married to him, and that she fled with him and with another of the bandits to Florida, where, later, a double murder was committed by the two men.

The Messina woman, together with White and Jarvis, were attempting to escape arrest for the said murders when they were traced to Slidell and there taken into custody after the exchange of pistol shots, by one of which White was killed. The woman admits that she had used various assumed names, and

---

*Rehearing refused May 21, 1934.

there is no doubt that such income as had accrued to her prior to the holdup of the bank had been derived from illegal sources and particularly from immoral practices.

Her story is that in her trade as rooming-house keeper she had accumulated some $2,300, and that the $875 taken into custody by the police officers was the balance remaining from this fund. But, if her story is true, then $2,300 had been sufficient to finance her paramour and herself for several months, to purchase two automobiles, to pay the expenses of the entire party to Florida and back, and to support them while in Florida and to leave remaining the said balance. She states that her party was in no way implicated in the holdup and that they received none of the money which resulted from the same, and that they had no other revenue than the money which was in her possession and which, she says, had been earned in her former trade as a rooming-house keeper.

We see no reason to accord to her very apparent fabrication a detailed discussion. It is sufficient to say that the two bank clerks from whom the money was taken were able to identify, by penciled memoranda on the bills, some of the money. The complete identification of the bandits as the persons who had robbed the bank and the fact that later some of the money was also identified, when considered in connection with the flight of the bandits and their willingness to resort to force in resisting arrest, all make it impossible to believe that there is any truth whatever in the statements of Vanita Messina.

Counsel calls attention to the presumption of ownership which results from possession, and he contends that the money was found in the possession of his client, and that, therefore, since there is a presumption of ownership, judgment should be rendered in her favor.

In the first place, some of the money was found on one of the bandits in Arizona, hundreds of miles away. In the second place, the other money was found, not in the personal possession of Vanita Messina, but in the room occupied jointly by her and the two men. And in the third place, even if all the money had been actually in her individual, personal possession, the evidence which has been produced would be sufficient to annihilate any presumption of ownership on her part.

Since these suits were instituted, the Canal Bank & Trust Company has been placed in liquidation and J. S. Brock, State Bank Examiner, through H. G. Thomson, his special agent, and John F. Finke, liquidator, have been made parties instead of Canal Bank & Trust Company.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be amended by substituting for Canal Bank & Trust Company, J. S. Brock, State Bank Examiner, through H. G. Thomson, his special agent, and John F. Finke, liquidator; and as thus amended the judgment appealed from is affirmed.

Affirmed.